Good morning. If it pleases the Court, my name is Michael Bigelow and I represent Appellant Andrew Bedenfield. I would like to reserve a couple of minutes, I think, in rebuttal. Maybe you can first address the jurisdictional issue of whether we have jurisdiction on whether there was a waiver. Doing that first is, well, the plea agreement says that there is a waiver. And if I can direct your attention to excerpts of record at page 34, waiver is conditioned. It states he gives up his right to appeal any aspect of the sentence imposed in this case, so long as his sentence. What line are you reading from? I am reading from, thank you, approximately line 23 to 23.5. Okay. Go ahead. Sentencing guideline range determined by the Court, consistent with the sentencing guideline stipulations set forth above. My argument is that the stipulations set forth the sentencing guideline range. The sentence exceeded the guideline range. But where does it set up the range? I'm sorry? Where does it set up the range? In the stipulations set forth above. Those stipulations No, but where is it? Show me where it is. On the preceding page. Can I ask what page are you on? I'm sorry. Page 33 of the excerpts of record. The stipulations set forth the guideline factors which determine the sentence. The sentence is 51 at the low end and I want to say 57 at the high end. At issue is where Where does it say that? Paragraph 7, assuming the total offense level is Assuming, assuming. No, it takes an assumption into account. So if that assumption isn't true, there's no waiver. I mean, right, the waiver controls. In which event the plea agreement should be null and void because there is no meeting of the mind. Well, there is a meeting of the mind that is based upon an assumption. Again, the plea agreement, depending upon who wishes to interpret the plea agreement, sets forth five or sets forth, rather, three contradictory agreements. The first is, on the face of it, the parties agree to certain factors that affect the guideline range, and I'll deal with Factor V in just a moment if I may. The second is, on the face of it, the parties agree to certain factors that affect the guideline range, and I'll deal with Factor V in just a moment if I may. The third is, on the face of it, the parties agree to certain factors that affect the   It doesn't really set up an agreement. The third is, on the face of it, the parties agree to certain factors that affect the guideline range, and I'll deal with Factor V in just a moment if I may. The fourth is, on the face of it, the parties agree to certain factors that affect the guideline range, and I'll deal with Factor V in just a moment if I may. Well, what can I press you a little bit? Why do you think there's no agreement if the parties say we believe and they realize there are a lot of things that may not be settled, and their belief is they're willing to go ahead on the belief and an assumption, but they still go ahead? I contend that, in fact, there was an agreement, that the use of the word assuming is a poor choice of words. Well, there is an agreement, but it's an agreement that's somewhat limited. If it is not a level V, then the lawyer committed is ineffective for having told his client it's a level V and you're going to get 51 to say no. No, he doesn't tell them that. He tells them this is what it looks like. If he hasn't done the – clearly the client believed it to be a level V. Well, the client believes that the lawyer is making a good guess. Yeah, well, good guesses don't count in the practice of law and when you're talking about – Well, they don't count, but that's the best he can do is a good guess. But it isn't the best he can do because he has access to all of the defendant's criminal history. Either he misstated the criminal history to his client, did not understand the criminal history to his client, and I don't believe what I'm going to say for a minute – Well, you can't attack the assistance of counsel on this appeal. Correct on this appeal because there's insufficient evidence to support whatever was said between client and lawyer. But it's reasonable to believe certainly the client understood a level V. You see, Mr. Berger, you see, Mr. Berger, it's quite common. Almost every plea agreement I've seen does not have an agreement on the criminal history. The reason is because at the time the plea agreement is reached, nobody knows for certain what the history is, including the defendant. And so it's very, very common to leave that factor open without agreement. And the best you can do is set forth your belief. So that can't be a binding factor. I would agree with that. You didn't know the criminal history, did you, at the time you entered into this agreement? I wasn't trial counsel, Your Honor. Well, whoever it was, obviously, I think, did not know. If the criminal history is stated in any plea agreement – It's not stated with certainty. It just says we believe. Your Honor, in any plea agreement that I enter into as trial counsel where I state a criminal history, I know what that criminal history is. I'm not going to represent to my client, oh, geez, you know – That's exactly right. That's exactly right. And that's the reason this is couched in terms of a belief, because a lawyer obviously did not know what the – And he's got no business representing to his client that he's going to get – We don't know that he did. That's not in the record that he represents to his client. It actually is at sentencing, during the sentencing – What does it say? Show me that in the sentencing transcript. Does the lawyer say, I told my client for certainty that the criminal history was right? Page 75 of the excerpts of record, Your Honor. Okay. Line about 9. I think in light of the fact Mr. Bentonfield pled under the predicate, if you will, the sentencing range would be 51 to 57 months. Under the predicate. That's the predicate. It's not – again, see, that's not – It's not an agreement or certainty. No, but – If that predicate isn't true, right? It's obviously being reserved. I didn't hear the last, I'm sorry, Your Honor. See, if that predicate is not so, then, you know, the waiver kicks in. In other words, it's another – predicate is another term that's different from an agreement or from expressing certainty. I think in the context of that particular sentence, he is saying – in the context of that sentence, the lawyer is saying, Judge, I told him it was 51 to 57 months. Well, that's a different issue anyway. If you want – if you or someone else want to bring this up in another case, you can do it, but you can't do it here. I can try. I understand, Your Honor. Thank you. You don't have much time left. The jurisdiction was – it's not fatal almost. It looks like it's fatal. Thank you, Your Honor. May it please the Court, I'm Camille Skipper, Assistant U.S. Attorney, appearing on behalf of the United States. Good morning, Your Honors. The briefing, I believe, in this case is rather complete. If the Court has any questions for the government concerning the appeal waiver or the issue of whether this is an 11c1c plea, the government would be happy to respond to those. Well, there was the, you know, let's take Mr. Bigelow's argument from the standpoint that the range was set up as I believe, and why wouldn't it be reasonable to say that that would affect whether you were waiving, you know, that he waived what he's challenging here? The waiver in this case, which again is – Because it does create a little bit of a confusion, I think. Well, the waiver in this case on page 34 of the excerpts of record clearly states not a range or not a sentence above which the defendant could not be sentenced, but that it be no longer than the top of the sentencing guideline range determined by the court, consistent with the sentencing guideline stipulations set above. And the stipulations are clearly set out in paragraphs 1 through 3 of Part B on page 33. The criminal history category, as the Court has already observed, is couched in belief languages. It's the belief of the parties because criminal history calculations are notoriously difficult. And the probation officer will frequently come back with a criminal history category that is different from the ones that the parties thought would apply to the case. But in addition to that, the court at the time of the plea was very careful and very consistent in advising the defendant that it could sentence him to something lesser than or greater than the guideline calculation or lesser than or greater than the recommendation of the government. And that's exactly what we found. Were you the assistant at the sentencing? Yes, Your Honor, I was. And did the court, you know, have a colloquy with the defendant about the plea agreement in terms of what was being left open and what was not being left open? What the government did at the time was state, did actually state the terms of the plea agreement. And the court then asked if the defendant understood those to be the terms. When you say what the government did, you mean just sort of recited the terms of the agreement? Yes, Your Honor. Okay. In reciting those terms, the government noted that the parties believed that the defendant's criminal history category was 5. And in addition, that we had also agreed to several sentencing stipulations. That's on page 49 of the excerpt of record beginning at about line 11. And then the court later on, and this is at page 52 of the excerpt of record, asked if the defendant understood that the government had agreed to make certain recommendations regarding the sentence and that the court was not required to follow those recommendations and that if the court didn't, the defendant would not be able to withdraw his guilty plea but would still be bound by the terms of the plea. And the court asked, do you understand that? And the defendant said yes. All right. Well, that clears up that he couldn't withdraw. Does that clear up whether his waiver was knowing and voluntary, I guess? Or are you arguing that you would import that into if there was any confusion about whether belief was agreement or whatever, that that statement would clear it up? I believe that statement does clear it up. But then the court went on to ask this. Believe again. The statement does clear it up. And then the court went on to specifically address the waiver of appeal and collateral attack. And that's on page 53 of the excerpt of record beginning at line 6. The court asked if the defendant understood that he was waiving his right to appeal and collateral attack from the sentence or the plea. The defendant said yes. What page is that on? This is on page 53 of the excerpt of record, Your Honor, at line 6. Okay. Go ahead. And right after that, I said, just to clarify the conditional nature of the waiver, that the waiver of appeal was conditioned that the sentence not be greater than the top of the guideline range. And the court said understood. This was this clarity in both the plea agreement and in the record at the taking of the defendant's plea. Events is that the defendant had to know that he had not bargained for a sentence of 51 months. The court itself stated that it could sentence the defendant up to the top of the statutory maximum, which is 30 years. Now, certainly if the court had sentenced him to 30 years, he would have had the right to appeal. But there's very little ambiguity in this plea agreement. The only ambiguity that exists in this plea agreement with regard to his right to appeal is his criminal history category, which the parties believed to be 5, but which could have been lower and in this case was higher. But it only goes to 6. So it had to be 5 or 6 if it was going to be to the defendant's detriment. And if it was 6, then the guideline range changed to 57 to 71 months. That's very little ambiguity here. The defendant knew that he was not entitled by the plea agreement to a sentence of 51 months when he entered it, and he was told that consistently and continually in the plea agreement and through the plea hearing. So the defendant did not bargain for a specific sentence. Kennedy, you know, you've made that point several times as has the Court. You don't need to keep repeating it. I'm sorry. Does anyone have any further questions? No. I don't think that you need any more argument, unless there's something burning that you need to say. No, Your Honor.  It seems to me that, based on what Ms. Skipper just pointed out to the Court with respect to her continued advisement of the district court, that waiver of appeal is conditioned. And what it was conditioned upon, it seems to me, and it's stated by her in court and in the plea agreement, is that it's he waives his appeal if the sentence he receives is consistent with what he understands the plea bargain to be. He understood the plea bargain to be one thing. He understood it reasonably. No, the law is, though, but the law is that plea agreements are construed, you know, like much like a contract, and you have to make that construction on an objective, reasonable basis. It's not really subjectively what he understood. Isn't that the law? Keller, I don't have those notes, but Keller, I cite it in my brief, speaks to that issue. It is what the parties reasonably believed. Now, he is a party to this. Now, obviously, it's a contract dispute at this point. The government believes the contract said something else. But a party to the contract reasonably believed that the sentence would be within the criminal history guideline, criminal history 5 range. He reasonably believed that. Keller says we construe the contract consistent with that belief. So on the basis of the record before us and our job is to determine whether or not it's reasonable to construe the term belief as meaning agree. Right. Ambiguity in a car. Is that ambiguous? It's a plain, you know, it's a plain English word. Everybody understands what that means to you and to me, perhaps. I believe you owe me a thousand dollars. Doesn't mean you agree that you owe me that. To a young man with a 12th grade education, and I will agree a bit of a miscreant in his own right, but nonetheless, with a 12th grade education, it seems to me clear through this record that he believed it to be 51 to whatever, it's 57 months. And that ambiguity in his mind is to be construed in favor of him. And I'm way over my time. And I would thank the court. Thank you both for your argument. This matter will now stand submitted. United States of America versus Javier Gomez Moreno. Case number 0610166. That matter is submitted on the briefs and will be submitted as of this date. United States of America versus Malcolm Dawson. Case number 0610229.
judges: Tashima, Callahan, Schiavelli